UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE HINES,

        Plaintiff,　　　　　　　　　　　　Civil Action No. 12-12478

vs.　　　　　　　　　　　　　　　　　　HON. MARK A. GOLDSMITH

G. REYNOLDS SIMS &
ASSOCIATES, P.C.,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. 13)**

## I. INTRODUCTION

This is a consumer lending case brought under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. The matter presently before the Court is the motion for judgment on the pleadings (Dkt. 13) filed by Defendant G. Reynolds Sims & Associates, P.C. (GRSA) pursuant to Federal Rule of Civil Procedure 12(c). The issue presented by GRSA is whether a release of liability signed by Plaintiff Jamie Hines precludes her current action, as a matter of law. Having reviewed the response (Dkt. 17) and reply (Dkt. 21), and having determined that oral argument would not aid the decisional process (Dkt. 20), the motion is ripe for decision. For the reasons outlined below, the Court denies GRSA's motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to the pleadings, Plaintiff Jamie Hines owed a debt to A&A American Financial, LLC (A&A). Compl. ¶¶ 4-5. Hines incurred the debt by use of a credit card for personal expenses. Id. ¶ 6. A&A obtained a default judgment in state court against Hines for $4,834.01 on December 3, 2007. Ex. A (Dkt. 6-1). GRSA was A&A's counsel for the

state-court action.  Id.

After entry of the judgment, A&A and Hines entered into a settlement agreement, on January 21, 2009, which required Hines to make monthly payments of $150 against a balance of $6,709.21, not including interest and costs.[1]  Release (Dkt. 6-2).  The settlement agreement also contained a clause whereby Hines agreed to release A&A from liability:

> Defendant [Hines] hereby forever releases the Plaintiff [A&A], their assigns, legal counsel, agents and successors from any and all further claims of whatever nature and all liability, known or unknown, foreseen and unforeseen, that could or may arise from this action or facts.

Id.[2]

Afterward, GRSA contacted Hines twice regarding the debt.  First, GRSA called Hines in October 2011 and spoke with Hines.  Compl. ¶ 16.  Second, GRSA called Hines on March 20, 2012 and left a voicemail.  Id. ¶¶ 14-15.  Subsequently, on May 3, 2012, Hines' bank, J.P. Morgan Chase, remitted $2,420.44 to A&A, pursuant to a non-periodic garnishment.  Answer, Ex. C. (Dkt. 6-3).

In June 2012, Hines filed her complaint, in which she alleges at least five violations of the FDCPA and seeks compensatory and statutory damages, attorney's fees, costs, and any other relief that the Court might deem appropriate.  Hines alleges that GRSA violated the FDCPA through its debt collecting efforts, including (i) making a phone call to her where it did not identify itself as a debt collector, (ii) failing to tell her the amount she owed on her debt, and (iii) threatening to report her to credit reporting agencies if she failed to pay her debt.

---

[1] Apparently, the amount of the default judgment accrued at a statutory rate of 13% from March 20, 2006.  Therefore, the amount in the settlement agreement exceeded the amount in the default judgment.

[2] Although not addressed by either party, Jamie Hines apparently used to go by the name "Jamie Laraway," as that name is used in the state court judgment and the release.  Also, the signature on the release states "Jamie Hines," but it is above a signature line of "Jamie Laraway."

### III. ANALYSIS

Defendant GRSA seeks judgment on the pleadings pursuant to Rule 12(c). GRSA argues that the release that Hines signed by her and A&A extends to GRSA and prevents Hines from asserting her FDCPA claims. For reasons discussed below, the Court denies GRSA's motion.

A. The Parties' Arguments

GRSA argues that Hines' claims are barred by the release, making judgment on the pleadings proper. According to GRSA, the release was based on adequate and sufficient consideration. Def's Mot. at 10-11 (Dkt. 13). As a judgment creditor, A&A was entitled to enforce the judgment it obtained in state court. Id. at 11-12. In consideration for not enforcing that right, A&A entered into the agreement where Hines agreed to installment payments. Id. GRSA further argues that the express terms of the release cover the parties of the instant action (Hines and GRSA) and the present FDCPA claims. Id. at 12-15. GRSA also states that Hines has failed to show, by a preponderance of the evidence, that the terms of the release are ambiguous or unfair, or that GRSA, as counsel for A&A, somehow engaged in overreaching conduct to procure the release. Id. at 15-17.

In response, Hines makes three arguments. First, Hines argues that the Court should not consider the release to be a part of the pleadings because GRSA attached it as an exhibit to its Answer in order to respond to Hines' FDCPA claim under 15 USC § 1692e(11), which requires a debt collector to inform a consumer in an initial communication that the debt collector is attempting to collect. Pl.'s Resp. Br. at 7 (Dkt. 18). Hines asserts that, if the Court considers the release as part of the pleadings, it should only read the release in light of the claim under § 1692e(11). Id.

Hines' second argument focuses on the language of the release. She argues that by its

3

terms, the release is ambiguous, and therefore its scope must be decided by a jury. Hines focuses on the phrase "this action" in the release, which was the state-court collection matter. Id. at 9. Hines states that "this action" limits the scope of the release, so as not to include GRSA's conduct subsequent to the state-court collection action and "which do not relate directly" that matter. Id. at 10. Hines also argues that the release's reference to "facts" is ambiguous. Id. Alternatively, Hines states that the release language unambiguously does not bar her FDCPA claims. Id. at 12-15. Hines argues that she could not have "contemplated future actions" by GRSA years after the release was signed and that the release fails to explicitly reference future claims. Id. at 14.

Lastly, Hines' third argument contends that the public policy of the FDCPA would be "stifled" if the release were construed to bar Hines' claims. Id. at 15. Hines argues that the FDCPA is "a remedial statute that is to be liberally construed in favor of consumer debtors." Id. at 16. If consumers like her are required to execute similar releases in order to execute payment agreements, Plaintiff contends, the consumers will be precluded from bringing future FDCPA claims premised on conduct unrelated to the original debt and payment agreement. Id. at 16-17.

GRSA's reply brief argues that Hines has failed to show, by a preponderance of the evidence, that the release is ambiguous. Def.'s Reply at 3-4 (Dkt. 21). GRSA also argues that Hines' FDCPA claims are included in the scope of the release and that barring Hines' claims would not frustrate the purposes of the FDCPA because, if it did, debt collectors would not use post-judgment repayment arrangements, but rather use other remedies, such as writs of garnishment. Id. at 5-6.

    B.   Standards under Federal Rule of Civil Procedure 12(c)

GRSA moved under Rule 12(c) for judgment on the pleadings. Any party may move for the entry of a judgment after the pleadings are closed, but early enough not to delay trial. Fed. R.

4

Civ. P. 12(c). Courts apply the same analysis to motions for a judgment on the pleadings under Rule 12(c) as are applied to applications for dismissal under Federal Rule of Civil Procedure 12(b)(6). Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007). However, a court need not accept as true legal conclusions or unwarranted factual inferences. Id. at 581-582

When evaluating a motion for a judgment on the pleadings, a court considers the pleadings, which consist of the complaint, the answer, and any written instrument attached as exhibits. Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include the complaint and the answer); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) ("documents attached to the pleadings become part of the pleadings").

As a threshold matter, Hines contends that the Court should not consider the release to be part of the pleadings, and if the Court does consider it to be part of the pleadings, to apply it only to Hines' claim under 15 USC § 1692e(11). Pl.'s Resp. Br. at 7 (Dkt. 18). Hines does not cite any authority in support of her argument. However, as noted above, the Federal Rules of Civil Procedure explicitly require the Court to consider attachments to a pleading as "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). GRSA's answer is a pleading, see Fed. R. Civ. P. 7(a); thus, the exhibits attached to it are part of GRSA's pleading and shall be considered by the Court.

    C.   The Release under Michigan Contract Law

With the release attached to the answer and part of the pleadings, the Court looks to Michigan contract law to interpret its terms and scope. Under Michigan law, the scope of a release – like any contract – is governed by the intent of the parties. Wyrembelski v. City of St. Clair Shores, 553 N.W.2d 651, 652 (Mich. Ct. App. 1996). When interpreting the release, courts "may not make a new contract for parties under the guise of a construction of the contract, if doing so will ignore the plain meaning of words chosen by the parties . . . ." Zahn v. Kroger Co., 764 N.W. 2d 207, 211 (Mich. 2009). A release of liability is valid, if it is fairly and knowingly made. Wyrembelski, 553 N.W. at 652.

Generally, a release will "ordinarily release all present, but not future, claims." 29 Williston on Contracts § 73:10 (4th ed.). Michigan courts have enforced this tenet of hornbook law, refusing to interpret releases to cover future claims arising from future conduct where the release does not explicitly reference such scope. General Motors Corp. v. Weberman, No. 210441, 2000 WL 33406707, at *8 (Mich. Ct. App. Oct. 3, 2000) (in construing redemption agreement, court found that there was "no indication in the agreement that General Motors agreed to release any rights, much less a future claim . . . ."); Harvard Drug Group, LLC v. Twin City Fire Ins. Co., No. 11-10066, 2011 WL 3426193, at *5 (E.D. Mich. Aug. 5, 2011) (release referenced only the underlying lawsuit, released unknown or unsuspected damages, and waived rights under state law, but failed to reference claims not yet in existence). See also Moulton v. U.S. Steel Corp., 581 F.3d 344, 349-350 (6th Cir. 2009) (holding that settlement of continuing-nuisance claims were included in release because the released claims shared a "factual predicate" with "the claims pled in the complaint," but that the release did not cover future nuisance claims or government enforcement actions).

The initial question whether a release is ambiguous is a question of law. Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist., 550 N.W. 2d 228, 237 (Mich. 1996). If the text of the release is unambiguous, the parties' intentions are discerned from "the plain, ordinary meaning of the language of the release." Wyrembelski, 553 N.W. at 652. Moreover, a dispute between the parties regarding the meaning of the release "does not, in itself, establish an ambiguity." Id. Like any contract, an unambiguous release must be construed as written. Kellogg Co. v. Sabhlok, 471 F.3d 629, 632 (6th Cir. 2006) (applying Michigan law). A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. Id. If a contract is ambiguous, the intent of the parties must be determined. Taggart v. United States, 880 F.2d 867, 870 (6th Cir. 1989). Where the contract language is ambiguous or susceptible to multiple meanings, interpretation becomes a question of fact. Port Huron, 550 N.W. 2d at 237.

Turning to the release entered into by A&A and Hines, the release, in pertinent part, states:

> Defendant [Hines] hereby forever releases the Plaintiff [A&A], their assigns, legal counsel, agents and successors from any and all further claims of whatever nature and all liability, known or unknown, foreseen and unforeseen, that could or may arise from this action or facts.

Release (Dkt. 6-2). The Court holds that the release applies to GRSA, as the express terms cover A&A's legal counsel which was and is GRSA.

Turning to interpreting the scope of the release, GSRA urges that the release in the instant case is analogous to the release in Stolaruk v. Cent. Nat'l Ins. Co. of Omaha 522 N.W.2d 670 (Mich. Ct. App. 1994). In Stolaruk, the Stolaruk Corporation sold land to Strada Asphalt Paving Company and litigation ensued. Id. at 671. The parties entered into a consent judgment which incorporated terms of a release and indemnity agreement. Id. The release applied to "all claims, past, present or future, known or unknown, accrued or not accrued, contingent or otherwise, relating to these parties arising out of or relating to the transactions between the Plaintiffs and the

7

Defendants which are the subject matter of the instant litigation." Id. at 672 (emphasis in original). After the sale, the Michigan Department of Natural Resources ordered Stolaruk to clean up contamination on land it had sold to Strada. Stolaruk paid the clean-up costs and then brought claims against Strada and its insurer. The Michigan Court of Appeals held that the release barred Stolaruk from bringing future claims. Id.

GSRA argues that because the language in its release with Hines is similar to the language in Stolaruk, Hines should also be precluded from asserting "all present or future causes of action whether known or unknown." Pl.'s Mot. at 10. However, the conduct which Stolaruk became liable for after the execution of the release – contaminating the land sold to Strada – occurred prior to the execution of the release. Certainly, the instant release has similar language with the release in Stolaruk, but neither release expressly releases future liability arising from conduct that had not yet occurred. Therefore, Stolaruk does not support GSRA's theory that the release barred future claims arising from future conduct and the Court rejects GSRA's argument.

Furthermore, in construing the release, the Court holds that the scope of the release is ambiguous. The ambiguity arises because of the release's reference to "this action or facts." This may refer to the state-court debt-collection civil action brought by A&A over Hines' debt or it may refer to a future action, such as the instant action. It is also unclear what "facts" the release purports to encompass. For example, the "facts" might include those pertaining to the state-court debt collection lawsuit, or they might include other facts relating to conduct that occurred after that lawsuit. Additionally, another ambiguity exists in the release's phrase referencing "any and all further claims." The Court finds that the use of "further" is ambiguous, as the adjective could reference (i) claims Plaintiff could have brought arising out of the state-court debt collection action or (ii) future claims based on conduct occurring after the execution of the release.

Consequently, the Court concludes that, as a matter of law, the release is ambiguous and a finder of fact must discern the intent of the parties.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is denied (Dkt. 13).

SO ORDERED.

Dated: April 25, 2013         s/Mark A. Goldsmith
      Flint, Michigan         MARK A. GOLDSMITH
                           United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 25, 2013.

                           s/Deborah J. Goltz
                           DEBORAH J. GOLTZ
                           Case Manager